Slip Op. 19-19

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BOHLER BLECHE GMBH & CO KG, et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>UNITED STATES,<br><br>    *Defendant*,<br>  and<br><br>NUCOR CORP. and SSAB ENTERPRISES LLC,<br><br>    *Defendant-Intervenors*. | Before: Richard W. Goldberg, Senior Judge<br>Court No. 17-00163 |

**OPINION AND ORDER**

[Sustaining the Department of Commerce's Final Results of Redetermination Pursuant to Court Remand.]

Dated:  February 12, 2019

    *David E. Bond* and *Ron Kendler*, White and Case, LLP, of Washington, D.C., for plaintiffs.

    *Vito S. Solitro*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *Chad A. Readler*, Acting Assistant Attorney General, *Tara K. Hogan*, Assistant Director, *Jeanne E. Davidson*, Director, and *Nikki Kalbing*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C., for defendant.

    *Roger B. Shagrin* and *Paul W. Jameson*, Schagrin Associates, and *Alan H. Price* and *Christopher B. Weld*, Wiley Rein, LLP, of Washington, D.C., for defendant-intervenors.

    Goldberg, Senior Judge:  Before the court now are the Final Results of Redetermination Pursuant to Court Remand, ECF No. 55 (Oct. 9, 2018) ("Remand Results"), issued by the Department of Commerce ("the Department" or "Commerce") in its antidumping duty investigation of certain carbon and alloy steel cut-to-length plate from Austria.  *See Certain*

Court No. 17-00163

*Carbon and Alloy Steel Cut-to-Length Plate from Austria*, 82 Fed. Reg. 16,366 (Dep't Commerce Apr. 4, 2017) (final determ.) ("Final Determination"), and accompanying Issues & Decision Mem. ("I&D Mem."). Plaintiffs Bohler Bleche GmbH & Co. KG, Bohler International GmbH, voestalpine Grobblech GmbH, and voestalpine Steel & Service Center GmbH (collectively, "Plaintiffs") filed suit, challenging Commerce's methodology for selecting foreign like products. The court remanded the Final Determination to Commerce for further proceedings. *Bohler Bleche GMBH & Co. v. United States*, 42 CIT __, 324 F. Supp. 3d 1344 (2018) ("*Bohler I*"). Commerce's Remand Results now comply with the court's remand order and are supported by substantial evidence and in accordance with law; therefore, the Department's determination is sustained.

## BACKGROUND

In its Final Determination, the Department designed a model-match methodology, pursuant to 19 U.S.C. § 1677b(a)(1)(A), for the purposes of identifying suitable "foreign like products" with which to compare the exported subject merchandise.[1] Final Determination and accompanying I&D Mem. As part of that process, Commerce created merchandise groups, each assigned a control number ("CONNUM"), meant to group together "identical merchandise" used to match home market sales with U.S. sales. The Department compared the weighted-average of export sales within each CONNUM to the weighted-average of home market sales in that same CONNUM. I&D Mem. cmt. 1. As part of this process, the Department created a hierarchy of product characteristics, the third of which was QUALITY, which would be used for the purposes of sorting merchandise based on various quality-related characteristics. *Id.*

---

[1] The court previously sustained the Department's determination that the model-match methodology need not further account for process. *Bohler I*, 42 CIT at __, 324 F. Supp. 3d at 1354. Thus, the sole issue on remand was that surrounding the QUALITY and GRADE fields.

Plaintiffs proposed their own methodology, called CONNUM2, "that replaced the QUALITY field (which reported the type of steel and the chemical composition) with a GRADE field (which reported the gross estimation of the cost of alloy)." Remand Results at 4 (citing Pls.' Questionnaire Resp. B-13–14 (July 15, 2016), P.R. 163–174). Alternatively, Plaintiffs requested a number of changes to Commerce's methodology, including that the QUALITY field be placed first in the hierarchy, and that a QUALITY subcategory be added specifically for high alloy tool steel products. I&D Mem. cmt. 1. In response, Commerce moved the QUALITY field to first in the hierarchy. *Id.* Ultimately, Commerce's methodology produced a weighted average dumping margin of 53.72%, Final Determination, and Plaintiffs challenged those results.

On review, the court faulted Commerce's determination for "fail[ing] to account for commercially significant physical differences based on alloy content." *Bohler I*, 42 CIT at __, 324 F. Supp. 3d at 1350. The court found that "Commerce's methodology [could not] be sustained because it allow[ed] subject merchandise to be cast as 'identical' to dubiously similar foreign like products," in contradiction of statute. *Id.*, 42 CIT at __, 324 F. Supp. 3d at 1352 (citing 19 U.S.C. § 1677b(a)). What's more, the court found that "[t]hroughout the investigation, the Department largely ignored Plaintiffs' central argument: that the Department's methodology allows comparisons of products with commercially distinct physical characteristics . . . to determine whether" dumping occurred. *Id.* Therefore, the court disregarded Commerce's insistence that the challenges to the model-match methodology were untimely. *Id.* The court found Commerce's selected methodology unreasonable for insufficiently accounting for alloy contents and remanded to the Department so that Commerce could "amend its model-match methodology" so that a new model could be produced to differentiate between "similar" and "identical" products. *Id.*, 42 CIT at __, 324 F. Supp. 3d at 1354. Accordingly, Commerce was

ordered to "design a model-match methodology in [its] investigation that accounts for all commercially significant physical differences" and "apply recalculated dumping margins consistent with its redetermination of its model-match methodology." *Id.*, 42 CIT at __, 324 F. Supp. 3d at 1355.

On remand, the Department has now "reconsidered its model-match methodology" and "intends to use [Plaintiffs'] proposed alternative model-match methodology (i.e., CONNUM2 which replaces the QUALITY field with a GRADE field) and to recalculate [Plaintiffs'] dumping margins and the all-others rate." Remand Results at 1–2. Commerce's revised methodology "replaced the QUALITY product characteristic field with a GRADE field to account for all commercially significant differences, including alloy content." *Id.* at 7. The Department viewed Plaintiffs' CONNUM2 proposal from the underlying investigation as the only option that would "account for all commercially significant physical differences," namely alloy content. *Id.* at 9–10. This change resulted in a revised antidumping duty margin of 28.57%. *Id.* at 10.

In its comments on the Remand Results, Plaintiffs encourage the court to sustain Commerce's determination. They note that not only is the adoption of CONNUM2 reasonable, "the Department has the discretion to choose any [reasonable] methodology." Pls.' Comments in Support of the Final Results of Redetermination Pursuant to Court Remand 3, ECF No. 57 (Nov. 8, 2018). Commerce, on the other hand, issued the Remand Results under respectful protest, *see* Remand Results at 2 (citing *Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003)), maintaining its view that the court incorrectly determined that Plaintiffs "timely raised [their] arguments concerning Commerce's model-match methodology in [their] July 15, 2016, questionnaire responses," *id.* at 6.

## **DISCUSSION**

The court now sustains Commerce's determinations as both: 1) based on an option in conformance with the court's prior order and 2) supported by substantial evidence and in accordance with law.  The Department's altered methodology accounts for physical differences based on alloy content and, per the court's prior order, results in a reasonable determination.  Accordingly, Commerce's Remand Results are sustained.

The statute requires that Commerce compare "[f]oreign like product[s]," defined either as identical merchandise or similar merchandise, *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1375 (Fed. Cir. 2008), in such a manner as to allow for a "fair comparison," 19 U.S.C. § 1677b(a).  While it is true that the Department's prior methodology ran counter to the directives of the statute, *see Bohler I*, 42 CIT at __, 324 F. Supp. 3d at 1352 ("Commerce's methodology cannot be sustained because it allows subject merchandise to be cast as 'identical' to dubiously similar foreign like products, when the statute plainly requires a different approach."), generally this court grants Commerce substantial discretion in its review of the Department's chosen model match methodology, *SKF USA, Inc.*, 537 F.3d at 1379.  Commerce's altered methodology not only differentiates between identical and similar products, it also provides a reasonable basis for conducting a fair comparison.  Whereas Commerce's prior methodology neither aligned with statutory directives nor resulted in fair comparisons, *see Bohler I*, 42 CIT at __, 324 F. Supp. 3d at 1352, the methodology chosen on remand is reasonable as it fairly compares commercially significant differences in physical characteristics.

Accordingly, the court finds the Department's determination—that is, adopting CONNUM2 and the resultant rate—to be reasonable as it is supported by substantial evidence and in accordance with law.

## CONCLUSION

For the foregoing reasons, the court **SUSTAINS** Commerce's determination in full and enters judgment in the Department's favor.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: February 12, 2019
New York, New York